**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| Larry Brown, Gary Albert, and Staci Albert, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Airgas Specialty Products, Inc.; Airgas, Inc.; IHG Hotels & Resorts, PLC; IHG Franchisor, LLC; and Champion Hotels and Development Company of Oklahoma, LLC; and John Does 1-10<br>Defendants. | ) | Case No. CIV-25-1473-SLP<br><br>*Removed from the District Court of Custer Court, State of Oklahoma, Case No. CJ-2025-149* |

**PLAINTIFF'S MOTION TO REMAND AND OPENING BRIEF IN SUPPORT**

In accordance with 28 U.S.C. § 1332(d)(4)(A), Plaintiff moves to remand this local controversy to state court.

**BACKGROUND & SUMMARY OF THE ARGUMENT**

On the evening of November 12, 2025, the Holiday Inn Express & Suites in Weatherford, Oklahoma negligently allowed a tanker truck carrying approximately 25,000 pounds of anhydrous ammonia to park in its parking lot. The tanker leaked ammonia gas into the local community. Oklahoma defendant,

Champion Hotels and Development Company of Oklahoma, LLC ("Champion"), owns and operates the Holiday Inn.

Plaintiffs filed suit on December 2, 2025, in Oklahoma state court. On December 8, 2025, Defendants Airgas Inc. and Airgas Specialty Products Inc. removed the case to federal court, invoking Class Action Fairness Act ("CAFA") jurisdiction.

This case, however, is a local controversy that belongs in Oklahoma state court under the plain language of 28 U.S.C. § 1332(d)(4)(A).

First, Plaintiff can prove by a preponderance of the evidence that more than 2/3 of the class members are citizens of Oklahoma. Second, a local defendant, Champion, is at the very heart of Plaintiffs' claims. Plaintiffs and the class members seek significant relief from Champion, and its conduct forms a significant basis for their claims. Indeed, if Champion had not let the tanker truck park overnight in the Holiday Inn's parking lot, the leak would never have happened in Weatherford. Third, it is undisputed that *all* the injuries alleged occurred in Oklahoma. Finally, it is undisputed that this is the first class action filed based on these factual allegations.

Accordingly, under the plain language of 28 U.S.C. § 1332(d)(4)(A), this Court *must* remand this local controversy back to state court in Oklahoma.

## ARGUMENTS AND AUTHORITIES

### I. This Court must remand under the "local controversy" exception.

This Court must remand this case under the "local controversy" exception to CAFA jurisdiction. Remand is mandatory under 28 U.S.C. § 1332(d)(4)(A) under the circumstances here. This is the quintessential "local controversy."

The "local controversy" exception "is intended to respond to concerns that class actions with a truly local focus should not be moved to federal court under [CAFA] because state courts have a strong interest in adjudicating such disputes." *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1243 (10th Cir. 2009) (quoting S. Rep. No. 109-14, at 39 (2005)).[1] With respect to the exception, the Tenth Circuit has explained

> that a federal court "shall decline" jurisdiction where: (1) more than two-thirds of the class members are citizens of the state where the action is filed; (2) plaintiffs seek "significant relief" from at least one local defendant who is a citizen of the state and whose alleged conduct forms a "significant basis" for the claims asserted; (3) the "principal injuries" were incurred in the state; and (4) no other class action "has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons" in the three years prior.

[1] As the party seeking remand, Plaintiffs bear the burden of showing jurisdiction is improper in this court. *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1262 (10th Cir. 2014).

*Dutcher v. Matheson*, 840 F.3d 1183, 1190-91 (10th Cir. 2016) (citing 28 U.S.C. § 1332(d)(4)(A)).

In assessing each element, this Court should "bear in mind that the purpose of each of these criteria is to identify a truly local controversy—a controversy that uniquely affects a particular locality to the exclusion of all others." S. Rep. No. 109-14, at 38 (2005). But if a plaintiff satisfies all the exception's requirements, the court *must* decline to exercise jurisdiction. *Woods*, 771 F.3d at 1265; *see also* 28 U.S.C. § 1332(d)(4) ("[a] district court shall decline to exercise jurisdiction . . . .").

If this case—which involves claims against an Oklahoma hotel owner for allowing ammonia gas to leak into a largely residential Oklahoma community—is not a "local controversy," it is hard to imagine what would be.

### A. Far more than 2/3 of Plaintiffs and class members are Oklahoma Citizens.

Plaintiff can establish by a preponderance of the evidence that more than 2/3 of the proposed class members are Oklahoma citizens. *See Nichols v. Chesapeake Operating, LLC*, 718 F. App'x 736, 739 (10th Cir. 2018). "The preponderance of the evidence standard requires the party with the burden of proof to support its position with the greater weight of the evidence." *Nutraceutical Corp. v. Von Eschenbach*, 459 F.3d 1033, 1040 (10th Cir. 2006).

In this case, Plaintiffs defined the putative class as:

> All persons (including natural persons and businesses) who, on or about November 12-13, 2025, were present, resided, owned, leased, or operated property, or conducted business within the evacuation or shelter-in-place zone designated by Weatherford, Oklahoma authorities in response to the anhydrous ammonia leak from the Airgas tanker truck behind the Holiday Inn Express & Suites in Weatherford, Oklahoma, and who were required to evacuate as a result of the Incident or who may need medical evaluation in the future as a result of the Incident.

Original Class Action Petition ¶ 33. As this class definition indicates, Plaintiffs defined the class narrowly to include only natural persons or businesses that were in the "the evacuation or shelter-in-place zone designated by Weatherford, Oklahoma authorities" on November 12-13, 2025, while the orders were in place.

For jurisdictional purposes, "a person is a citizen of a state if the person is domiciled in that state." *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014). "And a person acquires domicile in a state when the person resides there and intends to remain there indefinitely." *Id.*; *see also Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there."). Under CAFA, a business is "deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10).

Plaintiffs can provide concrete and overwhelming evidence that more than 2/3 of the class members are Oklahoma citizens.

Plaintiffs' experts with Decision Analyst conducted a survey of a representative sample of the residential population living in the evacuation and shelter-in-place zones on November 12-13, 2025, while the evacuation and shelter-in-place orders were in effect. Ex. 1, Jerry Thomas Affidavit, ¶¶ 4-6. Decision Analyst interviewed or surveyed 233 people. *Id.* ¶ 7. At the time of the event, there were 593 people in the households of the individuals interviewed or surveyed. *Id.* ¶ 8. Out of those 593 people, 585 of them were citizens of Oklahoma. *Id.*

Because its team interviewed or surveyed a more-than-representative sample, Decision Analyst was able to extrapolate its data to the entire population with a high degree of confidence. *Id.* ¶ 9. Decision Analyst estimates that there were 943 residents in total in the affected area, 930 of whom were Oklahoma citizens. *Id.*

Decision Analyst's estimate of the population does not include the 53 Oklahoma citizens living at the Corn Heritage Village. *Id.* All 53 of these individuals were Oklahoma citizens. Ex. 2, Marci Russell Affidavit, ¶ 5. Combining the residents of Corn Heritage Village with the results of Decision Analyst's study, there are 996 people living in the shelter-in-place and evacuation zones, 983 of whom are Oklahoma citizens. *Id.*; Ex. 1 ¶ 9.

Plaintiffs' counsel's assistant, Parker Coffman, has determined that there are about 100 businesses in the evacuation and shelter-in-place zones. Ex. 3, Parker Coffman Affidavit, ¶¶ 2-3. Using the Oklahoma Secretary of State's website—the content of which this Court may judicially notice—Plaintiffs have confirmed that at least 61 of these businesses are Oklahoma citizens. Ex. 4, Amy Orzo Affidavit, ¶ 3. Only about nine to eleven of these businesses were open past 10:00 p.m. on the evening of November 12, 2025, so it is extremely unlikely that there were any non-Oklahoma-citizens at these businesses at the time of the evacuation and shelter-in-place orders. *See* Ex. 3 ¶ 3.

Finally, while there were three hotels in the area, these hotels do not change the analysis. Plaintiffs know that at least some of the individuals staying at the hotels were Oklahoma citizens because Plaintiffs' counsel represents some of the hotel guests who are Oklahoma citizens. But even assuming that there were 100 guests at each hotel in the small town of Weatherford, Oklahoma on a quiet Wednesday in November (two weeks before Thanksgiving) and that *none* of these guests was a citizen of Oklahoma, it would *still* be the case that more than 2/3 of the class members were Oklahoma citizens. After all, 2/3 of 996 is 664. Nine-hundred-eighty-three minus 300 is 683—far more than 664.

After you add in the business class members, there are still more than 2/3 of the total class that are Oklahoma citizens. Two thirds of 1096 (996 + 100

businesses) is 730.7. One-thousand-forty-four (983 + 61 Oklahoma citizen businesses) minus 300 is 744—*that is, far more than 731*. And again, assuming 100 non-citizens at each hotel is almost certainly an over-count. Weatherford is a small town, and there was no major event or holiday at the time of the leak.

Accordingly, Plaintiffs have established that it is far more likely than not that more than 2/3 of the putative class are Oklahoma citizens. (Alternatively, as argued below, Plaintiffs request that this Court hold an evidentiary hearing and allow limited jurisdictional discovery.)

**B. Plaintiffs seek "significant relief" from a local defendant whose conduct forms a "significant basis" for the claims.**

Plaintiff can establish the second element of the local controversy exception because a local defendant is at the very heart of Plaintiffs' claims. If Defendant Champion did not negligently allow the tanker to park at its hotel overnight, the leak never would have happened. Plaintiffs and the class seek to hold Champion jointly and severally liable for *all* their damages.

Champion is undoubtedly an Oklahoma citizen under CAFA. "Although Oklahoma law generally determines a limited liability company's citizenship based on the citizenship of its members, Congress 'prescribed a different rule as to unincorporated associations for purposes of' CAFA." *Adams v. Eagle Rd. Oil LLC*, 403 F. Supp. 3d 1197, 1203 (N.D. Okla. 2019) (quoting *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237 n.1 (10th Cir. 2015)). "Under CAFA, an

'unincorporated association,' including a limited liability company, is 'deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.'" *Id.* (citing 28 U.S.C. § 1332(d)(10)). There is no dispute that "Champion Hotels and Development Company *of Oklahoma*, LLC" has its principal place of business in Oklahoma and is incorporated under Oklahoma law. The Oklahoma Secretary of State's website, which this Court can judicially notice, confirms this commonsense inference.[2] "Thus, the requirement of subsection (cc) is satisfied[,]" because Champion is an Oklahoma defendant. *Adams*, 403 F. Supp. 3d at 1203.

The Court next looks to the "allegations of the [petition]" to determine whether Champion constitutes a defendant from whom "significant relief" is sought and whose alleged conduct "forms a significant basis" for Plaintiffs' claims. *Id.* at 1204. Here, Champion is clearly a "primary focus" of Plaintiffs' complaint—not just a "peripheral" player. *See id.*

At the outset, Champion is right at the heart of Plaintiffs' claims. If the hotel did not negligently allow the tanker to park in the parking lot, the tanker would not have leaked gas into Weatherford. Plaintiffs and the class allege Negligence, Negligence Per Se, Public and Private Nuisance, Trespass, Premises

[2] SOS, Entity Summary Information for Champion Hotels and Development Company of Oklahoma, https://bit.ly/49I6YUn.

Liability/Negligent Failure to Warn, and Punitive Damages claims against Champion. Plaintiffs alleged the "Premises Liability/Negligent Failure to Warn" claims *only* against Champion (the "Hotel Owner") and the IHG defendants. Several individual allegations are directly targeted at the hotel owner. For instance, Plaintiffs alleged that Champion "[f]ail[ed] to implement, enforce, or follow reasonable policies regarding the presence of hazardous materials on Hotel property;" that it "fail[ed] to timely detect, stop, and mitigate the ammonia leak;" and that it "fail[ed] to provide adequate warnings and emergency instructions to guests, residents, and nearby property owners." Original Class Action Petition ¶¶ 43(d)-(f); *see also, e.g.*, *id.* ¶ 61.

The *Adams* case is on all fours. Just like in *Adams*, "Plaintiffs allege that [Champion] breached its duty to all members of the putative class to 'use ordinary care … ,' and seek[] to impose liability on [Champion] for damage sustained by the entire class." 403 F. Supp. 3d at 1204; Original Class Action Petition ¶¶ 41-45. Plaintiffs also "seek to hold [Champion] liable for trespass to all members of the class." *Adams*, 403 F. Supp. 3d at 1204; Original Class Action Petition ¶¶ 56-58. "In the [Petition], relief is sought against [Champion] by members of the entire class, not merely a subset of the class." *Id.* at 1205; *see also Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1245 (10th Cir. 2009) ("The district court determined that the 'significant relief element is satisfied here, where the petition claims that

every potential plaintiff is entitled to recover from [] [the local defendant] and the proposed class seeks to collect damages from all defendants jointly and severally.' … We agree with the district court's plain language analysis."); Original Class Action Petition ¶¶ 65-66; Prayer for Relief.

As in *Adams*, Plaintiffs' "conclusion is consistent with the legislative history of CAFA, as demonstrated by consideration of the examples provided in the Senate Judiciary Committee report of appropriate and inappropriate exercises of CAFA jurisdiction." *Id.* The committee gave the following example as a clear "local controversy":

> The suit is brought against the cemetery, a Florida corporation, and an out-of-state parent company that was involved in supervising the cemetery. … This is precisely the type of case for which the Local Controversy Exception was developed. Although there is one out-of-state defendant (the parent company), the controversy is at its core a local one, and the Florida state court where it was brought has a strong interest in resolving the dispute. Thus, this case would remain in state court.

*Id.* (quoting S. Rep. No. 109-14, at 39 (2005)). The committee contrasted this scenario with another:

> A class action is brought in Florida against an out-of-state automobile manufacturer and a few in-state dealers, alleging that a certain vehicle model is unsafe because of an allegedly defective transmission. The vehicle model was sold in all fifty states but the class action is only brought on behalf of Floridians. … [T]he automobile dealers are not defendants whose alleged conduct forms

> a significant basis of the claims or from whom significant relief is sought by the class. Even if the plaintiffs are truly seeking relief from the dealers, that relief is just small change compared to what they are seeking from the manufacturer. Moreover, the main allegation is that the vehicles were defective. In product liability cases, the conduct of a retailer such as an automobile dealer does not form a significant basis for the claims of the class members.

*Id.*

This case is far more analogous to the cemetery case than the defective automobile case. Champion, the local hotel owner, harmed *all* the class members, and the leak would not have occurred in Weatherford but for the hotel's negligence, negligence per se, public and private nuisance, trespass, and premises liability/negligent failure to warn. Although there are also some out-of-state defendants,[3] "the controversy is at its core a local one, and the [Oklahoma] state court where it was brought has a strong interest in resolving the dispute." *Id.* Unlike in the defective automobile example, all of Plaintiffs and class members are seeking full relief from the hotel. *See id.*

This Court should not entertain any attempts by Defendants to adjudicate the merits. "Although [Champion] may not ultimately be *liable* to plaintiffs, the court's analysis of this issue is limited to the allegations of the [petition]." *Id.* at

[3] In *Adams*, there were only two local defendants out of seven. 403 F. Supp. 3d at 1206, 1206 n. 7.

1206 (emphasis in original); *see also Coffey*, 581 F.3d at 1245 ("The statutory language is unambiguous, and a 'defendant from whom significant relief is sought' does not mean a 'defendant from whom significant relief may be obtained.'"). "It is clear from those allegations that [Champion] is a 'real target' of the litigation, rather than 'an isolated role player.'" *Id.* It is worth noting that Champion has *always* been a defendant. *See id.* ("In fact, the court takes judicial notice of the fact that Eagle Road was a defendant in plaintiffs' original Class Action Petition."). "Thus, the requirements of subsections (aa) and (bb) are satisfied and [Champion] constitutes a significant local defendant." *Id.*

Therefore, Plaintiff can easily establish the second element of the local controversy exception. That is, Plaintiffs and the class seek significant relief from an Oklahoma defendant, Champion, whose conduct forms a significant basis for Plaintiffs' claims.

**C. It is likely undisputed that Plaintiff can establish the last two elements.**

Finally, there is no plausible dispute that Plaintiffs can establish the last two elements of the "local controversy exception." This case concerns a chemical leak of anhydrous ammonia that occurred in an Oklahoma city and did not affect any other state. Indeed, the class is limited to people who were present in the evacuation and shelter-in-place zones at the time of the leak. The entire evacuation zone and shelter-in-place zones are in Oklahoma. The removing Defendants *admit*

that there was a leak of anhydrous ammonia in Weatherford, Oklahoma. Airgas Specialty Products, Inc. Original Answer ¶¶ 1-2 ; Airgas, Inc. Original Answer ¶¶ 1-2. Therefore, it is undisputed that Plaintiffs have established the requirements of 28 U.S.C. § 1332(d)(4)(A)(i)(III)—that is, the "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(III).

Finally, Plaintiffs are also the first individuals to file a class action based on the leak. Accordingly, "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii).

## II. Alternatively, if the Court requires more information, the Court should order limited jurisdictional discovery.

Plaintiffs have established through their affidavits by a preponderance of the evidence that this is a local controversy. But if the Court remains unsure, Plaintiffs respectfully request limited jurisdictional discovery. Courts in the Tenth Circuit, including Oklahoma courts, have routinely allowed discovery under similar circumstances. *See Potts v. Westside Chrysler Jeep Dodge, LLC*, No. CIV-21-502-D, 2021 U.S. Dist. LEXIS 171057, at *6 (W.D. Okla. 2021) ("Given these factual disputes, the Court is not able to determine whether it has jurisdiction over the case or, assuming jurisdiction is proper, whether it should abstain from exercising

that jurisdiction pursuant to a CAFA exception. Accordingly, the Court finds that limited discovery into these jurisdictional issues is appropriate."); *see also Speed v. JMA Energy Co., LLC*, 872 F.3d 1122, 1125 (10th Cir. 2017) (noting that district court permitted jurisdictional discovery related to CAFA exceptions); *Cowan v. Devon Energy Corp.*, No. CIV-16-510-SPS, 2017 U.S. Dist. LEXIS 185490, 2017 WL 5188059 (E.D. Okla. Nov. 8, 2017) (allowing jurisdictional discovery related to CAFA exceptions); *Gibson v. Cont'l Res., Inc.*, No. CIV-15-611-M, 2015 U.S. Dist. LEXIS 137292, 2015 WL 5883426 (W.D. Okla. Oct. 8, 2015) (same); *Baker v. PDC Energy, Inc.*, No. 14-CV-02537-RM-MJW, 2014 U.S. Dist. LEXIS 170093 (D. Colo. Dec. 9, 2014) (same); *Barricks v. Barnes-Jewish Hosp.*, No. 4:11-CV-x1386 CEJ, 2012 U.S. Dist. LEXIS 51422, 2012 WL 1230750 (E.D. Mo. Apr. 12, 2012) (same).

Therefore, in the alternative, this Court should allow limited jurisdictional discovery.

## CONCLUSION

Accordingly, for the reasons set forth above, this Court should remand this local controversy to state court or, in the alternative, allow limited jurisdictional discovery and an evidentiary hearing.

Dated: January 7, 2025

Respectfully submitted,

*/s/ Clayton B. Bruner*
Clayton B. Bruner, OBA No. 22079

Clayton B. Bruner, P.L.L.C.
P.O. Box 749
Weatherford, Oklahoma 73096
Telephone: (580) 774-5363
Facsimile: (580) 772-1116
Email: clay@claybruner.com
**Attorneys for Plaintiff**
**and the Proposed Class**
**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**