# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF OKLAHOMA

Larry Brown et al., individually and on ⟩
behalf of all others similarly situated, ⟩
⟩
     *Plaintiffs*, ⟩
⟩
vs. ⟩     Case No. CIV-25-1473-HE
⟩
Airgas Specialty Products, Inc. et al., ⟩
⟩
     *Defendants*. ⟩

## THE AIRGAS DEFENDANTS' RESPONSE TO
## PLAINTIFFS' MOTION TO REMAND

J. Todd Woolery, OBA #18882
Jodi C. Wetzel, OBA #22107
Patrick L. Stein, OBA #30737
Katherine M. Crowley, OBA #35094
MCAFEE & TAFT A Professional Corporation
Eighth Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-9621
todd.woolery@mcafeetaft.com
jodi.wetzel@mcafeetaft.com
patrick.stein@mcafeetaft.com
katie.crowley@mcafeetaft.com

**Attorneys for Defendants Airgas Specialty Products, Inc. and Airgas, Inc.**

February 18, 2026

# Table of Contents

Introduction ....................................................................................................... 1

Summary of Plaintiffs' Claims ........................................................................... 2

Argument and Authorities ................................................................................. 6

   A.   Overview of CAFA and Its Local-Controversy Exception. ...................................... 6

   B.   Plaintiffs have not and cannot show that Champion is a "significant local defendant." ...................................................................................................... 9

      1.   Champion's alleged conduct is not significant when compared to the Airgas Defendants' alleged conduct. .................................................................. 10

      2.   Champion's alleged conduct is not significant even when compared to the out-of-state Hotel Defendants because the same collective allegations and claims are asserted against all of them. ................................................................. 12

      3.   The authorities on which Plaintiffs rely are distinguishable. ............................... 14

   C.   Plaintiffs have failed to prove that greater than two-thirds of the proposed class members are Oklahoma citizens because their proffered evidence is divorced from their proposed class definition. ............................................................................ 16

      1.   Plaintiffs have presented no evidence as to the citizenship of class members who "owned, leased, or operated property" within the relevant area. ................................. 17

      2.   Plaintiffs have presented no evidence as to the citizenship of persons merely present in the relevant area. ...................................................................... 19

      3.   Plaintiffs' purported evidence is also over-inclusive as it does not address whether any of the potential class members "were required to evacuate as a result of the Incident" or "may need medical evaluation in the future as a result of the Incident.". 20

Conclusion .................................................................................................... 22

# Table of Authorities

## Cases

*Adams v. 3M Company*
  65 F.45h 802 (6th Cir. 2023) ............................................................... 10

*Adams v. Eagle Road Oil, LLC*
  403 F.Supp.3d 1197 (N.D. Okla. 2019) .............................................. 14

*Arbuckle Mountain Ranch of Texas, Inc. v. Chesapeake Energy Corp.*
  810 F.3d 335 (5th Cir. 2016) .......................................................... 2, 7

*Atwood v. Peterson*
  936 F.3d 835 (8th Cir. 2019) ........................................................ 11, 13

*Coffey v. Freeport McMoran Copper & Gold*
  581 F.3d 1240 (10th Cir. 2009) ........................................................... 6

*Dart Cherokee Basin Operating Co., LLC v. Owens*
  135 S. Ct. 547 (2014) ......................................................................... 7

*Dutcher v. Matheson*
  840 F.3d 1183 (10th Cir. 2016) ............................................... 2, 6, 7, 22

*Evans v. Walter Indus., Inc.*
  449 F.3d 1159 (11th Cir. 2006) ........................................................... 7

*Kaufman v. Allstate New Jersey Ins. Co.*
  561 F.3d 144 (3d Cir. 2009) ........................................................... 9, 13

*Kitchin v. Bridgeton Landfill, LLC*
  3 F.4th 1089 (8th Cir. 2021) ........................................................ 12, 13

*Nichols v. Chesapeake Operating, LLC*
  718 F. App'x 736 (10th Cir. 2018) ......................................... 2, 8, 16, 22

*Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc.*
  655 F.3d 358 (5th Cir. 2011) ............................................................ 13

*Reece v. AES Corp.*
  638 F. App'x 755 (10th Cir. 2016) ........................................................ 2

*Reece v. AES Corp.*
  No. CIV-12-457-JH, 2013 WL 1342379 (E.D. Okla. April 2, 2013) .................... 18

*Roppo v. Travelers Com. Ins. Co.*
  869 F.3d 568 (7th Cir. 2017) ............................................................................. 11

*Woods v. Standard Ins. Co.*
  771 F.3d 1257 (10th Cir. 2014) ........................................................... 7, 9, 12, 13

**Statutes**

28 U.S.C. § 1332(d) ....................................................................................passim

**Other Authorities**

Reference Manual on Scientific Evidence, *Reference Guide on Survey Research*,
  pp. 383-85 (Federal Judicial Center 3d edition 2011) .......................................... 17

Senate Report No. 109-14 .................................................................................. 6, 8

## Introduction

Defendants Airgas Specialty Products, Inc. and Airgas, Inc. (collectively the "Airgas Defendants") submit this response to Plaintiffs' motion to remand [Doc. #16]. Plaintiffs' motion does not challenge this Court's subject matter jurisdiction. Instead, Plaintiffs invoke a narrow exception to Congress' broad grant of subject matter jurisdiction in the Class Action Fairness Act ("CAFA"). Plaintiffs, however, have failed to demonstrate the so-called "local-controversy exception" to CAFA applies to this case.

First, the lone Oklahoma defendant in this case is not a defendant "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class." 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb). Second, Plaintiffs' purported evidence regarding putative class members' citizenship is disconnected from their proposed class definition, and therefore Plaintiffs have failed to prove with competent evidence that "greater than two-thirds" of the proposed class members are Oklahoma citizens. *Id.* § 1332(d)(4)(A)(i)(I).

Although the release of anhydrous ammonia giving rise to this case occurred in Weatherford, Oklahoma, that release occurred along an interstate highway in the parking lot of a hotel, and all but one of the Defendants who Plaintiffs sued—including all of the Defendants allegedly responsible for the actual release itself—are not Oklahoma citizens. Moreover, Plaintiffs voluntarily defined their class not just in terms of residence, but also property ownership, property leasing, business operations, and mere presence in the evacuation and shelter-in-place zones. Petition, Doc. #1-1, ¶ 33. Plaintiffs chose to define the class broadly, and by doing so they assumed an evidentiary

1

burden of proof that is difficult to carry. *See, e.g., Nichols v. Chesapeake Operating, LLC*, 718 F. App'x 736, 741-42 (10th Cir. 2018) ("By defining the class in terms of residence, Nichols saddled himself with an evidentiary burden, one which he sought to meet through admittedly imperfect evidence."); *Reece v. AES Corp.*, 638 F. App'x 755, 768-75 (10th Cir. 2016). There is "a **strong preference** that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dutcher v. Matheson*, 840 F.3d 1183, 1190 (10th Cir. 2016) (quotation omitted, emphasis added). Plaintiffs have not and cannot overcome that strong preference.

For the reasons that follow, this proposed class action belongs in federal court and Plaintiffs' motion to remand should be denied.

<u>Summary of Plaintiffs' Claims</u>

On November 12, 2025, a driver employed by Defendant Airgas Specialty Products, Inc. parked a semi-tractor truck pulling a tanker trailer containing anhydrous ammonia at the Holiday Inn Express & Suites in Weatherford, Oklahoma (the "<u>Hotel</u>").[1] Pet., ¶¶ 20-22. The tanker trailer was owned by Airgas Specialty Products, Inc. and the truck leased by that Defendant from a third party. ASP Answer, Doc. #9, ¶ 21. According to the Petition, "[a]round 10:00 p.m. a mechanical failure, gasket failure, valve failure, and/or faulty seal on the [trailer] caused a substantial release of anhydrous ammonia into the air in and around the Hotel." Pet., ¶ 23. As a result, the Petition alleges, "[a] visible, dense plume of ammonia gas formed and migrated across the

---

[1] Anhydrous ammonia ($NH_3$) is used in agricultural fertilizer, industrial refrigeration, and in various manufacturing processes and other industries.

Hotel parking lot, into the Hotel building, and into nearby residential and commercial areas." Pet., ¶ 24. The plume "spread beyond the Hotel, prompting emergency responders to order widespread evacuations and shelter-in-place directives for hundreds of Weatherford residents and businesses." Pet., ¶ 26.

Plaintiffs are three individuals who allege they suffered damages as a result of the anhydrous ammonia release. According to the Petition, Plaintiffs Gary and Staci Albert "resided within the area affected by the Incident and suffered property damage, evacuation-related losses, and/or economic loss as a result." Pet., ¶¶ 7-8. Plaintiff Larry Brown alleges he "was present within the area affected by the incident and suffered evacuation-related losses, and/or economic loss as a result." Pet., ¶ 6. Among other requested relief, Plaintiffs seek to recover unspecified "compensatory damages" in "an amount to proven at trial" on behalf of themselves and the following proposed class:

> All persons (including natural persons **and businesses**) who, on or about November 12-13, 2025, were **present**, **resided**, **owned**, **leased** or **operated property**, or **conducted business** within the evacuation or shelter-in-place zone designated by Weatherford, Oklahoma authorities in response to the anhydrous ammonia leak from the Airgas tanker truck behind the Holiday Inn Express & Suites in Weatherford, Oklahoma, and who were required to evacuate as a result of the Incident or who may need medical evaluation in the future as a result of the Incident.

Pet., ¶¶ 33, 65, Prayer for Relief C (emphasis added).

The Petition alleges "homeowners and tenants suffered intrusion of ammonia into their homes, loss of use and enjoyment, potential contamination of property, and associated expenses to clean, inspect, and restore their properties." Pet., ¶ 29.

3

Although Plaintiffs do not assert they are among them, the Petition also alleges that first responders "were exposed to high concentrations of ammonia and suffered acute injuries and increased risk of long-term health complications." Pet., ¶ 28. The Petition further alleges "[b]usiness owners and employees in the vicinity suffered lost profits, lost wages, and other economic losses arising from the closures, evacuations, and continuing disruptions caused by the Incident." Pet., ¶ 30.

With respect to the cause of the release, the Petition alleges the truck and trailer along with "its ammonia cargo, and associated equipment were owned, leased operated, supplied, and/or controlled by the Airgas Defendants," Pet., ¶ 21, and that the driver of the truck was "acting within the course and scope of his employment" for the Airgas Defendants when he parked the rig at the Hotel to obtain a room and rest. Pet., ¶ 22. Plaintiffs contend the ammonia release was due to "a mechanical failure, gasket failure, valve failure, and/or faulty seal on" the tanker trailer," Pet., ¶ 23, which Plaintiffs attribute to the Airgas Defendants' alleged failure "to properly design, inspect, maintain, and operate the [tanker trailer] and its components." Pet., ¶ 31. They also assert the Airgas Defendants were negligent in parking the tanker trailer at the Hotel, in failing to timely detect and mitigate the release, and in allegedly failing to adequately warn the Hotel's guests and nearby residents and property owners. Pet., ¶ 44. The Petition asserts claims for negligence, negligence per se, strict liability, public and private nuisance, and trespass against the Airgas Defendants. *See generally* Pet., ¶¶ 41-58.

In addition to the Airgas Defendants—neither of which are an Oklahoma citizen—Plaintiffs have also sued three additional "Hotel Defendants": (i) IHG Hotels &

Resorts, PLC ("IHG Hotels"); (ii) IHG Franchisor, LLC ("IHG Franchisor"); and (iii) Champion Hotels and Development Company of Oklahoma, LLC ("Champion"). Of these, only Champion is an Oklahoma citizen.[2] *See* Pet., ¶¶ 14-16. The Petition does not distinguish between the Hotel Defendants when making allegations or asserting claims. Instead, it alleges that all Hotel Defendants were negligent in "the ownership, operation, management, and control of the Hotel premises," Pet., ¶ 42, and all breached their allegedly shared "duty to keep the premises reasonably safe and to warn guests and invitees of unreasonably dangerous conditions not open and obvious to them." Pet., ¶ 60. Against the Hotel Defendants, the Petition asserts claims for negligence, negligence per se, public and private nuisance, trespass, and premises liability. *See* Pet., ¶¶ 41-49, 53-61.

Notably, the Petition does not allege the Hotel Defendants are responsible for the release of anhydrous ammonia that forms the fundamental basis of this lawsuit. Nor does the Petition allege Champion did, or did not do, anything particular or unique within the allegations and claims asserted against all Hotel Defendants. Based on the allegations in the Petition, IHG Hotels and IHG Franchisor are alleged to be just as responsible for the alleged failure to implement policies and warn guests as is

---

[2] Champion has appeared and asserted essentially the same claims against the Airgas Defendants as have Plaintiffs. *See* Doc. #25. Notably, however, Champion specifically denies it owned or operated the hotel at issue, claims it has been misnamed, and is thus not a proper party. *See id.* at 10, n.1; Doc. #27. Without Champion in the lawsuit, there are no Oklahoma defendants and the local-controversy exception to CAFA cannot apply.

Champion. For the reasons that follow, Plaintiffs have not and cannot carry their burden to prove the applicability of CAFA's local-controversy exception.

<u>**Argument and Authorities**</u>

**A.     Overview of CAFA and Its Local-Controversy Exception.**

Congress passed CAFA in response to "abusive practices by plaintiffs and their attorneys in litigating major class actions with interstate features in state courts." *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1243 (10th Cir. 2009) (per curiam); *see also* Senate Report No. 109-14, at * 4-27 (Feb. 28, 2005).

To this end, CAFA significantly expands the federal courts' diversity jurisdiction over class actions to include putative class actions where (i) the aggregate amount in controversy exceeds $5 million, and (ii) at least one member of the plaintiff class is diverse from any defendant. *See* 28 U.S.C. § 1332(d); *Coffey*, 581 F.3d at 1243. When these jurisdictional elements are present—which is not disputed in this case—federal courts are vested with subject matter jurisdiction over the controversy.

Although CAFA significantly expands the federal courts' diversity jurisdiction over cases filed as class actions, Congress sought to preserve state courts' authority to adjudicate controversies that are purely local in nature. S. Rep. 109-14, at *28. Accordingly, CAFA contains three narrow exceptions that either permit or require federal courts to "decline to exercise jurisdiction": (i) the local-controversy exception, (ii) the home-state exception, and (iii) the interests-of-justice exception. 28 U.S.C. § 1332(d)(3)-(4). These exceptions are not jurisdictional but rather operate like abstention doctrines in that the Court declines to exercise jurisdiction it has, as opposed to

being divested of adjudicatory authority altogether. *See, e.g., Dutcher v. Matheson*, 840 F.3d 1183, 1190 (10th Cir. 2016). Importantly, the burden of proving the applicability of CAFA's exceptions in a removed action is on the plaintiff. *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1262 (10th Cir. 2014). This is because "CAFA's language favors federal jurisdiction over class actions . . ." *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006). Thus, there is no presumption against removal in CAFA cases. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). Instead, once the threshold jurisdictional elements are established, "**all doubts are resolved in favor of exercising jurisdiction over the case**." *Dutcher*, 840 F.3d at 1190 (alterations omitted) (quoting *Evans*, 449 F.3d at 1163, emphasis added). *Accord Arbuckle Mountain Ranch of Texas, Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 342 (5th Cir. 2016) ("Underlying our analysis is our need to resolve lingering doubts in favor of exercising federal jurisdiction when an exception to [CAFA] jurisdiction is asserted.").

Here, Plaintiffs rely only on the local-controversy exception. To obtain remand under this narrow exception to CAFA, Plaintiffs must prove by a preponderance of the evidence that:

> [1] greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
> [2] at least 1 defendant is a defendant--
>
> > (aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

[3] principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

[4] during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

28 U.S.C. § 1332(d)(4)(A); *Nichols*, 718 F. App'x at 739 & n.3 (adopting preponderance standard). Congress intended for this to be "a narrow exception that was carefully drafted to ensure that it does not become a jurisdictional loophole." S. Rep. 109-14, at *39.

The Airgas Defendants do not dispute the third and fourth elements are satisfied in this case. However, Plaintiffs have failed to establish the first two elements. And while Plaintiffs seek leave to conduct additional jurisdictional discovery to shore-up their current submissions as to the first element, no amount of discovery can cure the deficiency in the second element. Accordingly, the Court should deny the motion to remand without further discovery.[3]

---

[3] If the Court is unpersuaded by the Airgas Defendants' legal arguments as to the second element, the Airgas Defendants do no oppose Plaintiffs' alternative request for leave to conduct limited, jurisdictional discovery, provided the Airgas Defendants are afforded the same opportunity.

**B.    Plaintiffs have not and cannot show that Champion is a "significant local defendant."**

To obtain remand, Plaintiffs must demonstrate Champion—the only Oklahoma Defendant in this case—is a "significant local defendant;" i.e., a Defendant "from whom significant relief is sought by members of the plaintiff class" **and** "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class." 28 U.S.C. § 1332(d) 4)(A)(2); *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1265 (10th Cir. 2014). A significant local defendant "must be a primary focus of the plaintiffs' claims . . ." and "a real target of the litigation . . ." *Woods*, 771 F.3d at 1266 (citing and relying on the Senate Judiciary Committee report on CAFA). Because Congress' intent with CAFA was to place a thumb on the scale in favor of federal jurisdiction over class actions with an interstate component, the significant local defendant requirement must be "interpret[ed] . . . strictly so that plaintiffs and their attorneys may not defeat CAFA jurisdiction by routinely naming at least one state citizen as a defendant, irrespective of whether that defendant is actually a primary focus of the litigation." *Id.* at 1265.

To satisfy this element, Plaintiffs cannot merely contend the local defendant's alleged conduct "is more than trivial or of no importance." *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 157 (3d Cir. 2009). Rather, "the statute requires [the] defendant's conduct to be 'significant' and the word 'significant' is defined as 'important, notable.'" *Woods*, 771 F.3d at 1266 (quoting *Kaufman*, 561 F.3d at 157). Importantly, when analyzing this question, Champion's alleged conduct must be

9

"significant **when compared to the alleged conduct of the other defendants** . . ." *Id.* (quotation omitted, emphasis added). Thus, Plaintiffs must demonstrate Champion's alleged conduct is important and notable when compared to the alleged conduct of the other Defendants.

### 1.    *Champion's alleged conduct is not significant when compared to the Airgas Defendants' alleged conduct.*

Notably absent from Plaintiffs' motion to remand is any comparison of the allegations made against Champion to the allegations made against any other Defendant. One reading Plaintiffs' motion without reading the Petition might conclude that this is a premises liability case about Champion's hotel policies, rather than a mass tort case stemming from the release of anhydrous ammonia not under any of the Hotel Defendants' control. Pet., ¶¶ 21-23. Remarkably, Plaintiffs' motion to remand does not even mention their allegations or claims against the Airgas Defendants! *See generally* Doc. #16. When Champion's alleged conduct is compared to the alleged conduct of other Defendants, it is not "significant" in the relevant sense.

On this score, *Adams v. 3M Company*, 65 F.45h 802 (6th Cir. 2023) is instructive. In that case,  the coal- miner-plaintiffs contracted pneumoconiosis due to inhaling coal dust particles which, they contended, should have been prevented by respirators manufactured by 3M and other out-of-state defendants had the respirators not been allegedly faulty. *Id.* at 803. In addition to the out-of-state manufacturers, the plaintiffs sued in-state retailers who sold or distributed the respirators. *Id.* The plaintiffs alleged the in-state retailers were negligent or even reckless in distributing the respirators and

sought to hold them jointly and severally liable. *See id.* Nonetheless, the Sixth Circuit found the in-state retailers were not significant local defendants because "[t]he 'core' of the miner's complaint alleges 3M (and other out-of-state defendants), designed, manufactured and sold defective respirators . . . 3M, in other words, is the 'real target in this action.'" *Id.* at 806 (quoting *Atwood v. Peterson*, 936 F.3d 835, 840 (8th Cir. 2019) (per curiam) (quotation omitted); *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 584 (7th Cir. 2017) (focusing on "the gravamen of [the] action.").

The same reasoning applies here. Fundamentally, this case centers on the release of anhydrous ammonia from a tanker trailer owned by Defendant Airgas Specialty Products, Inc. and operated by an employee of that Defendant and the cause thereof. Whatever their ultimate liability might be, the "alleged conduct" of the Hotel Defendants, including Champion, is quantitatively and qualitatively less than the alleged conduct of the Airgas Defendants (and any John Does who may also be responsible for the "mechanical failure, gasket failure, valve failure, and/or faulty seal," Pet., ¶ 23, that allegedly caused the release).[4] The Hotel Defendants' only alleged conduct in the Petition is that they let the Airgas Defendants' driver park the tanker-trailer in their parking lot overnight and allegedly failed to adopt or implement adequate policies. The Airgas Defendants, however, allegedly owned and controlled the tanker-trailer and were negligent in allegedly failing "to properly design, inspect, maintain, and operate the [tanker trailer] and its components." Pet., ¶ 31. Thus, the Airgas

---

[4] Upon information and belief, the John Does are not Oklahoma citizens either.

Defendants' alleged conduct is the core or gravamen of Plaintiffs' Petition, and Champion's is not.

> **2.** ***Champion's alleged conduct is not significant even when compared to the out-of-state Hotel Defendants because the same collective allegations and claims are asserted against all of them.***

Nor is Champion's alleged conduct notable or important when compared to that of the other Hotel Defendants, who are also out-of-state Defendants. Indeed, the Petition lumps Champion in with the other Hotel Defendants and makes the same allegations and asserts the same claims against all of them. *See generally* Pet., ¶¶ 41-49, 53-61. Again, to be significant, a local defendant's alleged conduct must be "important" or "notable" "when compared to the alleged conduct of the other defendants . . ." *Woods*, 771 F.3d at 1266 (quotation omitted). That is difficult to demonstrate when all of the defendants being compared are alleged to have done the same thing and to be liable in the same way.

On this point, *Kitchin v. Bridgeton Landfill, LLC*, 3 F.4th 1089 (8th Cir. 2021) is instructive. In *Kitchin*, the land-owner plaintiffs sued four defendants—only one of which was from the forum state—who allegedly "owned and/or operated the West Lake Landfill" and were allegedly "responsible for improper acceptance and handling of radioactive waste at the landfill." *Id.* at 1091. The same claims were apparently asserted against, and remedies sought from, all four of the defendants. The plaintiffs argued, and the district court agreed, the local defendant's conduct was "significant" for purposes of the local-controversy exception because it was alleged to have done the same things as the out-of-state defendants and the plaintiffs sought to hold it liable to

12

the same extent. *See id.* 1094. But the Eighth Circuit disagreed and reversed, holding such "collective allegations" against all defendants were insufficient to demonstrate that the local defendant's alleged actions were significant in the relevant sense. Based on the purpose of CAFA and the presumption in favor of federal jurisdiction, the Eighth Circuit held that a pleading that does "not allege any substantive distinctions between the conduct of the local and nonlocal defendants failed to indicate whether the local defendants' alleged conduct is an important ground for the asserted claims in view of the alleged conduct of all the Defendants." *Id.* (quoting *Atwood v. Peterson*, 936 F.3d 835, 840 (8th Cir. 2019)). *Accord Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc.*, 655 F.3d 358, 362 (5th Cir. 2011) ("Clearly nothing in the complaint distinguishes the conduct of LEMIC from the conduct of the other defendants.").

The Eighth Circuit's analysis is consistent with Tenth Circuit precedent in *Woods* and the *Kaufman* case from the Third Circuit on which *Woods* relied. *See generally id.* (citing both of those cases). The Court should find *Kitchin* persuasive and adopt its reasoning. A contrary rule would allow plaintiffs to evade CAFA jurisdiction merely by lumping a non-diverse defendant into a suit principally against out-of-state defendants and making conclusory allegations that all defendants did the same things and are liable for the same alleged damages. This would frustrate Congress' intent that the local-controversy exception be a narrow exception so that it does not become an end-run around CAFA's broad grant of subject-matter jurisdiction. *See Woods*, 771 F.3d at 1265 ("[W]e interpret the significant local defendant requirement strictly so that plaintiffs and their attorneys may not defeat CAFA jurisdiction by routinely naming at least

13

one state citizen as a defendant, irrespective of whether that defendant is actually a primary focus of the litigation.").

### 3. The authorities on which Plaintiffs rely are distinguishable.

Against the above backdrop, Plaintiffs' reliance on *Adams v. Eagle Road Oil, LLC*, 403 F.Supp.3d 1197 (N.D. Okla. 2019) is misplaced, and that case is not "on all fours" with this one. In *Adams*, the plaintiff sued seven defendants who operated about 20 saltwater disposal wells in Oklahoma and alleged their disposal of oil and gas wastewater caused certain earthquakes, which the plaintiffs alleged caused them and a proposed class of certain Oklahoma citizens to suffer property and other damages. Of the seven defendants, four were Oklahoma citizens. Ex. 1, Adams 3d Am. Pet., ¶¶ 5-12. The operative petition specifically identified which wells each defendant was alleged to have operated and how much produced water each was alleged to have injected during the relevant time. *See id.* ¶¶ 40-44. Eagle Road, who was indisputably one of the local defendants, was "alleged to [have] been the second biggest polluter" and was thus allegedly more responsible than most for the seismicity and damages in suit.[5]

---

[5] The largest alleged injector, Territory Resources, LLC, who was represented in *Adams* by the undersigned counsel, was also an Oklahoma citizen. The operative petition alleged Territory was the largest injector, *Adams*, 403 F. Supp. 3d at 1204, and the plaintiff's briefing and even expert submissions targeted Territory in particular. Adams Reply & Expert Declaration, Ex. 2. The *Adams* court's focus on Eagle Road in its written order is likely a function of the fact that the removing defendant, Trinity, had previously alleged Eagle Road was a local defendant in its notice of removal and then advanced a hyper-technical argument against remand that the plaintiff had failed to prove any defendant was in fact a local defendant. *See Adams*, 403 F. Supp. 3d at 1203 (holding Trinity bound by its admission). Judge Frizzell's order was merely responding to the arguments and record before him and using Trinity's admission against it. But *Adams* does not stand for the proposition that merely asserting in the petition that

*Adams*, 403 F. Supp. 3d at 1205-06. Accordingly, the court concluded Eagle Road was "a real target of the litigation, rather than an isolated role player." *Id.* 1206 (cleaned up).

The Petition here, in contrast, does not contain any allegations suggesting Champion's conduct was notable or important when compared to the conduct of other Defendants. The allegations and claims against Champion are virtually identical to those against the other Hotel Defendants and there are no allegations suggesting Champion is more responsible than any other. Moreover, there is no allegation Champion or any Hotel Defendant's conduct was responsible for the anhydrous ammonia release in the first instance, and that release and its cause are ultimately the gravamen of this case.

For similar reasons, the cemetery and automobile-design-defect examples from the Senate CAFA Report cited by Plaintiffs undermine their position. Unlike the parent company in the cemetery example, the Airgas Defendants and the out-of-state Hotel Defendants are not alleged to be merely supervising Champion and just derivatively liable for Champion's alleged torts. Rather, although it is admittedly an imperfect comparison, Champion is more akin to the car dealers in the second example where the "main allegation" of the lawsuit is asserted against others.

In summary, when the allegations in the Petition are considered as a whole and in context, there is nothing about Champion's alleged conduct that is "notable" or

all defendants are liable to the entire proposed class is sufficient to satisfy the significant local defendant requirement.

"important" when compared to the alleged conduct of other Defendants. As a result, Plaintiffs have not demonstrated and cannot demonstrate that Champion is a "significant local defendant." Therefore, the local-controversy exception to CAFA does not apply.

**C.    Plaintiffs have failed to prove that greater than two-thirds of the proposed class members are Oklahoma citizens because their proffered evidence is divorced from their proposed class definition.**

Plaintiffs have the burden of proving by a preponderance of the evidence that more than two-thirds of the members of their proposed class are Oklahoma citizens. 28 U.S.C. § 1332(d)(4)(A)(i)(I); *Nichols*, 718 F. App'x at 739 & n.3. As did the plaintiff in *Nichols*, Plaintiffs here have attempted to carry that burden based upon surveys and statistical sampling. But also as in *Nichols*, the Plaintiffs' proffered evidence is unreliable and insufficient to carry their burden of proof.

To analyze the citizenship of the members of a proposed class, one must start with the proposed class definition:

> All persons (including natural persons and businesses) who, on or about November 12-13, 2025, were **present**, **resided**, **owned**, **leased**, **or operated property**, **or conducted business** within the evacuation or shelter-in-place zone designated by Weatherford, Oklahoma authorities in response to the anhydrous ammonia leak from the Airgas tanker truck behind the Holiday Inn Express & Suites in Weatherford, Oklahoma, and who were required to evacuate as a result of the Incident or who may need medical evaluation in the future as a result of the Incident.

Pet., ¶ 33 (emphasis added).

As will be explained below, Plaintiffs' proffered evidence does not represent all categories of persons they included in the proposed class definition. Nor do Plaintiffs

prove that any of the potential class members about who they offer evidence actually meet their proposed class definition. As a result, Plaintiffs have failed to carry their burden of proof as to the citizenship of their proposed class.

### 1. Plaintiffs have presented no evidence as to the citizenship of class members who "owned, leased, or operated property" within the relevant area.

Plaintiffs' principal evidence in favor of remand is the survey results and statistical extrapolation performed by Decision Analyst, Inc. and Shapard Research. Doc. #16-1. That group purports to have interviewed 185 people residing within the relevant area and to have received online survey responses from 48 more.[6] From those survey results, Plaintiffs' retained marketing consultant opines there were 943 persons residing in the relevant area and 930 of those residents were Oklahoma citizens. *See* Doc. #16-1, ¶ 9. Admittedly, the survey did ask the residents whether they intended to live in Oklahoma for the foreseeable future, thus providing evidence of domicile. Doc. #16-1, Ex. C, QQ. 3 & 6. However, the survey did not ask whether those purported residents owned or leased their residence. Indeed, Plaintiffs have not proffered any evidence as to property ownership at all.

---

[6] Neither the declarations attached to the motion, nor the information Plaintiffs provided at Airgas Defendants' request, identifies how many houses they visited or what their non-response rate was. This is potentially problematic because Weatherford is a college town, and college students are probably more likely than other residents to be citizens of another state, and college students may also be more likely to not respond to door-to-door surveys. Thus, if the non-response rate was high, it may call into question the representativeness of the sample. *See generally* Reference Manual on Scientific Evidence, *Reference Guide on Survey Research*, pp. 383-85 (Federal Judicial Center 3d edition 2011), available at https://www.fjc.gov/sites/default/files/ materials/21/Sci-Man3D01.pdf (section entitled "What is the Evidence that Nonresponse Did Not Bias the Results of the Survey?").

The Court should not assume, especially in a college town like Weatherford, that a resident is also a property owner. Likewise, the court should not presume property owners are Oklahoma citizens. "In this context, courts have not found inferences as to citizenship based on property ownership to be particularly persuasive, and for obvious reasons—a person may own property in a particular state without being a citizen of it." *Reece v. AES Corp.*, No. CIV-12-457-JH, 2013 WL 1342379, *4 (E.D. Okla. April 2, 2013) (collecting cases and denying motion to remand).

A similar problem plagues Plaintiffs' evidence as to businesses. Plaintiffs contend there are 100 businesses within the relevant area and that at least 61 of them are Oklahoma citizens for purposes of CAFA jurisdiction. *See* Doc. #16-4. But as illustrated by the Plaintiffs suing multiple different entities for the Airgas Defendants and multiple entities for the Hotel Defendants here, when businesses are concerned there is often more than one entity who owns, leases, or operates the property or conducts the business. As evidenced by IHG Hotels and IHG Franchisor with respect to the Hotel Defendants here, the additional entities cannot be presumed to be citizens of the same state as the entity operating the business. Although it is unclear from Plaintiffs' submissions, they appear to have focused only on the entity conducting business and failed to offer any evidence as to the property owner or lessee.

In short, Plaintiffs chose to include persons who own or lease or operate property within their proposed class definition, but they failed to offer any evidence concerning the citizenship of any such persons.

### 2. *Plaintiffs have presented no evidence as to the citizenship of persons merely present in the relevant area.*

Plaintiffs acknowledge the relevant geographic area included hotels and other businesses open to the public. But they offer no evidence as to the citizenship of persons who may have been present there but neither reside nor conduct business in that area. Plaintiffs do assume there were 100 persons staying at each hotel, and they presume for the sake of argument all of them were not citizens of Oklahoma. *See* Motion, p.7. But they dismiss out of hand the idea that there could be other non-Oklahoma citizens present at any of the other businesses in the area merely because only a few businesses were open past 10:00 p.m. that night. *See id.* Plaintiffs' conjecture is not sound, however, because the businesses that were open are all exactly the sort of establishments that potentially out-of-state college students from nearby SWOSU, or travelers along Interstate 40, might frequent that time of night—Wal-Mart, convenience stores, and fast-food restaurants. *See generally* Doc. #16-3.

To be sure, it may be exceedingly difficult to identify persons who just happened to be present within the relevant geographic area at the time of the release. Indeed, the Airgas Defendants submit that may prove to be a problem for the proposed class definition under Rule 23. But Plaintiffs chose to define their class expansively and with the disjunctive "or." Having done so, Plaintiffs cannot now assume away the citizenship of such persons when attempting to obtain remand under the local-controversy exception to CAFA.

19

### 3. Plaintiffs' purported evidence is also over-inclusive as it does not address whether any of the potential class members "were required to evacuate as a result of the Incident" or "may need medical evaluation in the future as a result of the Incident."

As explained above, Plaintiffs' proposed class includes categories of persons about which Plaintiffs offered no evidence. Thus, Plaintiffs' proffered evidence is under-inclusive. But it is also over-inclusive. None of Plaintiffs' evidence addresses whether any of the persons or businesses Plaintiffs surveyed or otherwise investigated actually meet their proposed class definition. To meet Plaintiffs' proposed class definition, a person or business must be one:

[1] who were required to evacuate as a result of the Incident **or** [2] who may need medical evaluation in the future as a result of the Incident.

Pet., ¶ 33 (numbers and emphasis added).

There is no evidence that any of the survey respondents, for example, were required to evacuate as a result of the anhydrous release, nor is there any evidence that any respondent was actually exposed to anhydrous ammonia such that medical monitoring in the future could even conceivably be necessary.[7] *See generally* Doc. #16-1, Ex. C (no questions about those topics asked). Nor is there any similar evidence of these factors with respect to the businesses or the hotel guests.[8] As a result, the Court

---

[7] The Airgas Defendants dispute that Oklahoma law recognizes a claim for medical monitoring in the absence of an actual, present, physical injury. Future motion practice on that discrete issue is anticipated.

[8] To be sure, it has been reported that some hotel guests evacuated the hotels and were exposed to anhydrous ammonia. *See, e.g., https://www.koco.com/ article/ammonia-leak-weatherford-hotel-mass-evacuation-injuries/69429602.* But Plaintiffs offered zero evidence

is left guessing as to how many of the persons and businesses about which Plaintiffs have purported to offer evidence of citizenship actually fit within their proposed class definition. This over-inclusiveness renders Plaintiffs' purported evidence of citizenship unreliable.

* * *

Contrary to Plaintiffs' assertion, they have not presented "overwhelming evidence that more than 2/3 of the class members are Oklahoma citizens." Motion, p.6. Hyperbole aside, by Plaintiffs' own count using their own assumptions on the evidence they submitted, Plaintiffs' clear the two-third's threshold by a mere 13 persons. *See* Motion, p.8 (counting 744 Oklahoma citizens where they contend 731 are needed). So even if Plaintiffs' evidence was perfect, it would be a close call.[9] But as discussed above, Plaintiffs' purported evidence of the proposed class members' citizenship is insufficient and unreliable because it is both under-inclusive and over-inclusive. Therefore, Plaintiffs have not carried their burden of proving that greater than two-thirds of the proposed class members are Oklahoma citizens.

Plaintiffs may have expended significant effort conducting the marketing survey and otherwise presenting some evidence to this Court. But Plaintiffs' proffered

---

concerning who or how many were evacuated or otherwise exposed, and the hotel guests are among those most likely to not be Oklahoma citizens.

[9] Incidentally, plus or minus 13 persons is the standard error given by Plaintiffs' marketing consulting when providing his confidence interval around the percentage of residents he contends are Oklahoma citizens. *See* Doc. #16-1, ¶ 9. Thus, Plaintiffs' argument that 744 "is far more than 731" is wrong.

evidence does not match their proposed class definition. Plaintiffs voluntarily chose an expansive class definition full of disjunctive categories. As a result, "the need for this evidence was of [Plaintiffs'] own making." *Nichols*, 718 F. App'x at 741.

## Conclusion

There is "a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dutcher*, 840 F.3d at 1190 (quotation omitted). Once CAFA's minimal jurisdictional elements are established—which is undisputed in this case—"all doubts are resolved in favor of exercising jurisdiction over the case." *Dutcher*, 840 F.3d at 1190 (alterations and quotations omitted). Plaintiffs have failed to prove with competent evidence that the narrow local-controversy exception to CAFA applies here. Champion, the only local Defendant in the case, is not a significant local Defendant for purposes of CAFA. Accordingly, the Court should deny Plaintiffs' motion to remand without further litigation. In addition and in the alternative, Plaintiffs have failed to prove more than two-thirds of the proposed class members are Oklahoma citizens.[10]

Therefore, the Court should deny Plaintiffs' motion to remand and exercise the jurisdiction conferred to it by Congress through CAFA.

---

[10] In the event the Court concludes Champion is a significant local Defendant but that Plaintiffs' current evidence is insufficient to prove more than two-thirds of the proposed class are Oklahoma citizens, the Airgas Defendants do not oppose Plaintiffs' alternative request for leave to conduct limited jurisdictional discovery, provided the Airgas Defendants are afforded the same opportunity.

Submitted on February 18, 2026.


_/s/Patrick L. Stein_
J. Todd Woolery, OBA #18882
Jodi C. Wetzel, OBA #22107
Patrick L. Stein, OBA #30737
Katherine M. Crowley, OBA #35094
MCAFEE & TAFT A Professional Corporation
Eighth Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-9621
todd.woolery@mcafeetaft.com
jodi.wetzel@mcafeetaft.com
patrick.stein@mcafeetaft.com
katie.crowley@mcafeetaft.com

**Attorneys for Defendants Airgas Specialty Products, Inc. and Airgas, Inc.**